UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of<br><br>ATHOS ASIA EVENT DRIVEN MASTER FUND; KEVIN XIN LU; FOURWORLD EVENT OPPORTUNITIES, LP; BCIM STRATEGIC VALUE MASTER FUND, LP; MASO CAPITAL ARBITRAGE FUND LIMITED; and MASO CAPITAL INVESTMENTS LIMITED,<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 21-mc-_____ |

**DECLARATION OF MARC ALLAN KISH IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782**

I, **MARC ALLAN KISH**, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an attorney enrolled as an attorney-at-law in the Cayman Islands and admitted to practise before the Courts of the Cayman Islands. I am a partner and the Global Head of Dispute Resolution at the law firm Ogier. I am based in the firm's Cayman Islands office.

2. I was called to the Bar of England and Wales in 2003 and admitted to practise before the Courts in the Cayman Islands in 2008. I have practised continuously as a Cayman Islands attorney-at-law since then.

3. Ogier represents BCIM Strategic Value Master Fund, LP in proceedings before the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court") commenced by petition ("Appraisal Petition") filed by eHi Car Services Limited ("eHi" or the "Company") with the heading *In the Matter of eHi Car Services Limited* and cause number FSD 115 of 2019 (RPJ) (the "Appraisal Proceeding"). A true copy of the Appraisal Petition is annexed hereto at **Exhibit 1**.

1

4. A list of all the entities that held shares of the Company and dissented to the merger transaction that was approved by the Company's shareholders at an extraordinary general meeting held on 8 April 2019 ("EGM") is appended at page 6 of the Appraisal Petition.

5. Each of the Petitioners dissented to the Merger (defined at paragraph 11 of this Declaration) and, to the best of my knowledge, complied with the statutory requirements of section 238 of the Companies Law (2018 Revision) (now the Companies Act 2021 Revision) (the "Companies Act") ("Section 238") as described further in this Declaration. The Appraisal Proceeding will result in the Cayman Court determining the fair value of the shares that the Petitioners previously held in eHi, as described below.

6. The Petitioners have jointly retained Herrick, Feinstein LLP ("Herrick") in connection with this application for an Order of Judicial Assistance Pursuant to 28 U.S.C. § 1782 (the "Application").

7. By the Application, the Petitioners seek discovery from Duff & Phelps LLC ("Duff & Phelps") of documents relating to the valuation of the Company and the sale process leading to the going-private merger of the Company in order to assist the work of the valuation experts retained in the Appraisal Proceeding—and by extension the Cayman Court—in determining the fair value of the shares formerly held by the Petitioners.

8. I make this declaration in support of the Application, to provide (i) a factual background to the Appraisal Proceeding and the relief sought therein, (ii) a discussion of the scope of the parties' discovery obligations within the Appraisal Proceedings; and (iii) an overview of Cayman Islands law concerning the use of discovery obtained pursuant to 28 U.S.C. § 1782.

9.     To the extent the contents of this declaration are within my personal knowledge, they are accurate and correct. Insofar as they are not within my personal knowledge, they are true to the best of my knowledge, information, and belief.

### The Company's Going-Private Merger Transaction

10.    eHi is a car rental and related services company carrying on business in the People's Republic of China ("PRC").  The Company was founded in 2006 and is headquartered in Shanghai, PRC.  The Company's American depository shares ("ADS")  were publicly listed on the New York Stock Exchange from 18 November 2014 until shortly after the completion of the merger process outlined below.

11.    The Appraisal Petition provides that:

(a)     The Company is and was at all material times incorporated as an exempted limited company under the laws of the Cayman Islands;

(b)     On 18 February 2019, the Company entered into an Amended and Restated Agreement and Plan of Merger with Teamsport Parent Limited, an exempted company with limited liability incorporated under the laws of the Cayman Islands ("Parent") and Teamsport Bidco Limited, an exempted company with limited liability incorporated under the laws of the Cayman Islands and a wholly-owned subsidiary of Parent ("Merger Sub");

(c)     Pursuant to the Merger Agreement, Merger Sub was merged with and into the Company and ceased to exist, and the Company continued as the surviving company and became a wholly-owned subsidiary of the Parent (the "Merger"); and

(d)     In order to participate in the Appraisal Proceeding, the Petitioners were each required to convert their ADS into ordinary shares in the Company. The consideration for the Merger was US$12.25 per ADS or US$6.125 per ordinary share ("Merger Consideration").

12. A true copy of the proxy statement of the Company in relation to the Merger filed with the SEC on 11 March 2019 is annexed hereto at **Exhibit 2** ("Proxy Statement") and provides that:

(a) In response to a proposal to take the Company private, the board of the Company established a special committee of independent directors on 11 December 2017 ("Special Committee") and delegated to it the exclusive power and authority to evaluate, investigate and negotiate the terms of a potential going-private transaction, to retain advisors and to determine whether any such potential going-private transaction was fair to, and in the best interests of, the Company and the shareholders (page 24 of the Proxy Statement);

(b) The Special Committee engaged Duff & Phelps to provide an opinion as to the fairness of the Merger Consideration (page 24 of the Proxy Statement);

(c) The Company provided Duff & Phelps with financial projections and other relevant financial information to assist with its analysis and Duff & Phelps produced a written fairness opinion to the Special Committee on 4 April 2018 which confirmed a merger consideration of US$6.75 per share (or US$13.50 per ADS) was fair as of such date. The fairness opinion was later revised on 18 February 2019 and confirmed that a lower merger consideration of US$6.125 per share (or US$12.25 per ADS) was fair as of such date (pages 41 and 42 of the Proxy Statement). A copy of the second fairness opinion is at page C2 of the Proxy Statement.

**Petitioners' Requests for Discovery in Aid of the Appraisal Proceeding**

13. As noted above the Company commenced the Appraisal Proceeding by presenting the Appraisal Petition on 24 June 2019.

14. The Cayman Court's determination of the fair value of the Company's shares will involve considering valuation reports and testimony from valuation experts whom the Company and Petitioners have each retained.

15. A procedural timetable was subsequently established by way of a directions order dated 18 February 2020 (and filed on 23 March 2020) as amended from time to time by consent extending the timetable ("Directions Order").  A copy of the Directions Order is annexed hereto at **Exhibit 3** and a copy of a judgment delivered by the Cayman Court on 24 February 2020 in relation to the Directions Order is annexed hereto at **Exhibit 4**.  The latest version of the amended timetable that accompanies the Directions Order is contained in a consent order dated 20 November 2020 ("Revised Timetable"), a true copy of which is annexed hereto at **Exhibit 5**.

16. Paragraph 8 of the Directions Order sets out the scope of discovery to be given by the Company and paragraph 43 provides that any party seeking discovery in the United States of America under 28 U.S.C. § 1782 shall provide notice to the Cayman Court and other parties to the Appraisal Proceeding as soon as practicable after an application is made so that the Cayman Court can ensure that any foreign ancillary relief can be accommodated in the timetable of the proceedings.  As can be seen from page 14 of the Directions Order, the Company's Cayman Islands attorneys ("Maples and Calder") have approved the form and content of the Directions Order.

17. The Petitioners retained Professor Mark Zmijewski as their expert pursuant to paragraph 4 of the Directions Order.  Professor Zmijewski's online profile from the website of Charles River Associates is annexed hereto at **Exhibit 6**.

18. Paragraph 16 of Schedule 2 of the Revised Timetable provides that the parties' expert valuation reports are to be exchanged on 7 May 2021.

19. It is thus important that the experts receive all materials that may affect the assessment of fair value in a timely fashion.

20. The Company provided the final tranche of its documentary discovery on 18 December 2020 via an electronic data room pursuant to paragraphs 6 to 8 of the Directions Order, and provided its factual evidence for trial on 8 January 2021 pursuant to paragraph 35 of the Directions Order.

21. I am informed by Professor Zmijewski that he has completed an initial review of the Data Room and that he now seeks to obtain additional information and documentation from a number of key third parties in connection with the determination of fair value of the Petitioners' shares with a view to ensuring that the determination is made on the basis of all relevant information and is fair.

22. In a letter dated 13 January 2020 from Maples and Calder to the Petitioners' Cayman Islands attorneys, the Company confirmed a list of custodians from whom they had gathered documents for the Company's discovery. The list included Duff & Phelps as a custodian.

23. In an information request to the Company dated 14 December 2020 pursuant to paragraph 18 of the Directions Order, Professor Zmijewski sought confirmation as to whether information held by Duff & Phelps including but not limited to documents and communications constituting or concerning the transaction, financial reports, projections, valuation/rate of return analyses, re-listing and all work product (including draft versions and all underlying spreadsheets) related to the two fairness opinions prepared by Duff & Phelps and presented to the Special Committee dated 4 April 2018 and 18 February 2019 had been disclosed in the Company's data room. In response to that information request, on 18 January 2021 Maples and Calder responded that *"[t]o the best of the Company's knowledge and belief, all such documents that were prepared*

*or created in the five year period ending on the Valuation Date and are within the Company's possession, custody or power have been disclosed in the Data Room."*

24. It seems reasonable to infer that the Company's discovery does not include documents that are relevant to the valuation of the Company's shares but which are in the possession, custody or power of Duff & Phelps (unless they were also provided by Duff & Phelps to the Company).

25. The Petitioners seek discovery from Duff & Phelps as reflected in the proposed subpoena attached to the Declaration of Kyle J. Kolb submitted herewith (the "Subpoena").

26. Professor Zmijewski has confirmed to Ogier that he considers each of the document requests made of Duff & Phelps to be relevant to a fair valuation of the shares the Petitioners formerly held in the Company.

27. In addition, each of the Petitioners has confirmed to Ogier either directly or through their Cayman Islands attorneys that they are content to treat any documents obtained through this Application as confidential to the parties to the Appraisal Proceeding.

**The Scope of Discovery in the Appraisal Proceeding**

28. In the Appraisal Proceeding, the Cayman Court will determine the fair value of the shares that the Petitioners held in eHi in accordance with the statutory process contained in Section 238 of the Companies Act.

29. Pursuant to Cayman Islands law and the Directions Order, the Company is obligated to provide discovery of documents that are in the possession, custody or power of the Company and relevant to the fair value of such shares.

30. The Company does not have to produce documents from a non-party that are not otherwise in the Company's possession, custody or power.

31. The Cayman Court takes a broad view of the scope of discovery, and can order a party to provide discovery of documents *"relating to any matter in question between them in the action"* pursuant to Order 24, rule 2 of the Cayman Islands Grand Court Rules 1995 (Revised Edition) ("GCR"), which is annexed hereto at **Exhibit 7**.

32. Parties to Cayman Islands litigation are required to disclose relevant documents even if they adversely affect that party's case or support another party's case.

33. Cayman Islands law also incorporates the principle set forth in the English Court of Appeal case *Compagnie Financiere et Commerciale du Pacifique v Peruvian Guano Co.* (1882) 11 QBD 55 (**Exhibit 8**), where the Court found (at page 63) that a document can properly be said to contain information which may enable a party to advance his own case or damage his adversary's case—and is therefore equally discoverable—if it is a document which may fairly lead him to a train of enquiry which may have either of these two consequences. The "train of enquiry" test has since fallen away under English law but remains a part of the common law in the Cayman Islands having been adopted in cases such as *Renova Resources Private Equity Limited v Gilbertson* (2011(2) CILR 148) (**Exhibit 9**).

34. The scope of discovery in civil proceedings applies to Section 238 proceedings. In addition, the Cayman Court has stated that all documents that may be relevant to the valuation of the shares at issue in a Section 238 proceeding should be provided. In *Qunar Cayman Islands Limited v Athos Asia Event Driven Master Fund et al* (Unreported CICA 10 April 2018), the Cayman Islands Court of Appeal ("CICA") affirmed the statement by Parker J at first instance that *"it should be a general obligation of the Company to search for and produce all documents relevant to fair value."* A true copy of the *Qunar* decision is annexed hereto at **Exhibit 10.**

35. In addition, in *Qihoo 360 Technology Co. Ltd.* (Unreported CICA October 9, 2017), Martin JA stated in paragraph 19 that *"[t]he sole task of the Court is to determine the fair value of the dissenters' shares. To do that, it needs all information."* A true copy of the *Qihoo* decision is annexed hereto at **Exhibit 11.**

36. In *In the Matter of Trina Solar Limited* (unreported Judgment of Justice Segal handed down on 23 September 2020) the Cayman Court emphasized the importance of evidence to the exercise of allocating weight to the experts' views. The Honourable Mr Justice Segal stated at paragraph 340(i) *"[i]n our system, if dissenting shareholders and their experts are not satisfied with the documentary evidence produced they can apply for directions or specific discovery and can seek an order that the company file and serve evidence from particular witnesses."* A true copy of the *Trina* decision is annexed hereto at **Exhibit 12**.

37. The Cayman Court can order a non-party within the jurisdiction of the Cayman Islands to produce specific documents or to testify at trial, pursuant to Order 38, rule 13 of the GCR, which is annexed hereto at **Exhibit 13**. Duff & Phelps, however, is not within the jurisdiction of the Cayman Islands.

38. The Cayman courts are receptive to the use of 28 U.S.C. § 1782 applications to obtain discovery for use in Cayman proceedings. In *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553, the CICA held that the right to obtain full discovery, pre-trial deposition testimony and documents *"is a right conferred by U.S. law-it is not a right conferred by, or to be withheld under Cayman law."* In *Lyxor*, the CICA ruled that when a party has a right to avail itself of legitimate foreign process, like under 28 U.S.C. § 1782, there must be a compelling reason to prevent it from doing so. The CICA held that such a prohibition would

only be appropriate where the party was acting oppressively by trying to rely on the foreign process (paragraph 57). A true copy of the *Lyxor* judgment is annexed hereto at **Exhibit 14**.

39. Further, as noted above, the Directions Order also specifically contemplates that the parties may seek discovery using 28 U.S.C. § 1782 (*see* paragraph 43), and requires that the party shall, as soon as practicable after bringing any such application, notify the Cayman Court and the other parties to the Appraisal Proceeding of the application forthwith so that the Cayman Court can ensure that any foreign ancillary relief can be accommodated in the timetable of the Appraisal Proceeding.

*[remainder of page intentionally left blank]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 26 February 2021 at Grand Cayman, Cayman Islands.

_____
MARC ALLAN KISH